```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

INA-MAE SHER,                   }
                                }
     Plaintiff,                 }
                                }       CIVIL ACTION NO.
v.                              }       06-AR-0133-S
                                }
BIRMINGHAM BOARD OF             }
EDUCATION,                      }
                                }
     Defendant.                 }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Birmingham Board of Education (the "Board"), for summary judgment against plaintiff, Ina-Mae Sher ("Sher"). Also before the court are the Board's motions, contained in its reply brief, to strike certain factual allegations contained in Sher's response brief. Because the court did not rely on any of the factual allegations to which the Board objects, the motions to strike will be deemed moot.

Sher brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983. She alleges that she was subjected to unlawful discrimination and retaliation based on her race. Her claims are based on the Board's failure to promote her to a variety of positions with the Board. Her most vehement complaint is that the Board failed to offer her the position of Director of Reading and Language Arts for either the K-5 or 6-12 age groups. She also

-1-

claims that a series of other promotions were denied her over the years.  The Board argues that some claims are barred by the statute of limitations, and that as to all claims Sher is precluded because she failed to meet the administrative and/or procedural requirements necessary to bring certain claims.  The Board ends with the classic contention that Sher cannot establish that the Board's legitimate, non-discriminatory reasons for its decisions are pretextual.  Only because the court concludes that genuine issues of material fact exist as to whether the legitimate grounds the Board has articulated are mere pretext for discrimination, the court will deny the Board's motion for summary judgment insofar as it depends on that contention, but grant it in all other respects.

## I. Facts

Sher, a white female, has been a continuous Board employee for almost thirty years.  In addition to her many years of experience, she holds a doctorate in education and a number of certifications in administrative and educational fields.  She is currently employed as the program specialist for grades K-8.  In her years with the Board, she has served in a wide variety of administrative roles, including positions as principal and assistant-principal at multiple schools.  None of these positions ever lasted more than a few years.  In 1998, after a temporary stint as a principal, Sher was denied tenure in that position.  Instead, she took a position as an acting program specialist.  Six months later, she was made a

permanent program specialist, a position she currently holds.

Sher has enjoyed mixed success as an administrator. She consistently received strong evaluations for her ability to follow directions and guidance. However, she was often faulted for her difficulties in communicating with parents and co-workers and for some of the decisions she made as a principal. Her reviewers concluded that she is well-suited to a support position, but that she struggled in leadership roles.

In 1999, the Director of Reading and Language Arts position became vacant. Among the applicants for the position were Sher and Goldye Sanders ("Sanders"), a black female, who was selected. Sanders, who remained in this role until her resignation in 2002, was hired even though she lacked the state certification required for her duties. In 2001, the Alabama State Department of Education cited the Board because Sanders was uncertified. Pl.'s Ex. F. Shortly after Sanders resigned, the Board made the decision to split the Director of Reading and Language Arts into two separate positions; one covering kindergarten through grade 5 ("DLA K-5"), and the second covering grades 6 through 12 ("DLA 6-12"). No announcements were made to solicit applications for these positions. Instead, the Board selected Dimple Martin ("Martin") as acting DLA K-5, and Dr. Sandra Harrell as acting DLA 6-12. Both Martin and Harrell are black females. No other candidates were considered or interviewed.

Martin, at the time she was selected as the DLA K-5, lacked certain required qualifications for the position. Dr. Wayman Shiver ("Shiver"), the interim, and later permanent, superintendent of the Board, testified that he was responsible for Martin's appointment to the acting DLA K-5 position. Def.'s Ex. 2, Shiver Depo. 28-29. Shiver, who is black, admitted that he was unaware that Martin lacked the requisite credentials for her position because he failed to look at her resumé. *Id.* at 26-27.

As a general matter, once any Board employee received an "acting" appointment, it was only a matter of time before that appointment was made permanent. Shiver testified that he could not recall any acting employee who failed eventually to receive the corresponding permanent position. Def.'s Ex. 2, Shiver Depo. 33. Needless to say, the Board's policy of creating these pseudo-permanent appointments caused controversy. A number of Alabama Education Association members complained that the Board's practice was simply a way to circumvent the state law and Board policy requiring a job opening to be posted and made public. Furthermore, although this court cannot discern from the record any specifics, the parties agree that the Board's policy of using "acting" appointments to circumvent the normal hiring procedures was curtailed by a court order.

In 2004, permanent DLA K-5 and DLA 6-12 positions were posted and applications for these positions were accepted. Sher applied

for both positions, and the Board conducted interviews of the candidates. The interviews were conducted by Dr. Claudia Williams ("Williams"), a black female, the Board's curriculum and instruction officer. Unsurprisingly, the two candidates who emerged successfully from the interview process were Martin and Harrell, the incumbent holders of the "acting" positions. Williams testified that she cannot recall the questions that she asked in the interviews. No notes or scoring sheets were used during the interviews, and the only way to know what went on is from the recollections of those who participated. The only materials used to assess the candidates were their résumés. Williams testified that the interview panel did not look at personnel files or past evaluations. Def.'s Ex. 3, Williams Depo. 37-38. Sher was not named as one of the top three candidates for either position.

On November 3, 2004, shortly after Martin and Harrell were selected for the permanent positions, Sher filed her grievance with the EEOC, complaining of discrimination. Def.'s Ex. 32. Later that month, she filed an internal grievance with the Board, complaining of discrimination and of a hostile work environment. Def.'s Ex. 42. Sher's internal grievance was prompted, in part, by her poor relationship with Martin, which was fraught with conflict. As part of the Board's resolution of Sher's grievance, she received a temporary transfer from under Martin's supervision. What, if any, other relief was granted as a result of Sher's internal

grievance is unclear from the record.  *Id.*

Since filing her EEOC charge and internal grievance, Sher has applied for a number of Board positions.  She was not interviewed for any of these positions, and the jobs were all awarded to other applicants, even though Sher's résumé and qualifications reflect that she was well-suited to the positions.  For each of these positions, Williams was in charge of the hiring and interview process.  The Board does not dispute that its employees, including Williams, were aware of the EEOC charge filed by Sher.

## II. Summary Judgment Standard

In considering a Rule 56 motion, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court can enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

## III. Legal Analysis

Title VII imposes liability on employers where employment practices discriminate on the basis of race.  42 U.S.C. § 2000e-

2(a). 42 U.S.C. § 1981 protects an individual's right to be free from racial discrimination in the "making, performance, modification, enforcement, and termination of contracts." This statute, however, does not provide an independent cause of action against state actors. *Jett v. Dallas Independent School* Dist., 491 U.S. 701, 731, 109 S.Ct. 2702 (1989); *Butts v. County of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000). Therefore, any such claim must be brought under the auspices of the remedial provisions of 42 U.S.C. § 1983. It appears from her complaint, that Sher is bringing her § 1981 claims through an invocation of § 1983. The analysis of claims under these laws is the same where the underlying facts of discrimination are essentially the same. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Richardson v. Lees Police Dep't.*, 71 F.3d 801, 805 (11th Cir. 1995) (holding that where § 1983 is employed as a remedy for the same conduct remedied by Title VII, the elements of the two causes of action are the same).

As an initial matter, the Board argues that Sher is time-barred from bringing discrimination claims based on the 1998 hiring of Sanders as the Director of Reading and Language Arts. In this, the Board is correct. Under Title VII, for a claim to be actionable, an EEOC charge must be filed within 180 days of the alleged act discrimination. *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 543 (11th Cir. 1991). Sher filed her only

EEOC charge in November 2004. Therefore, all claims arising from the 1998 promotion of Sanders are barred, and, on these claims, the Board is entitled to summary judgment. Additionally, Sher is barred from bringing her §§ 1981 and 1983 claims relating to the 1998 promotions by the two year statute of limitations that applies under Alabama law. *Madison v. BP Oil Co.*, 928 F. Supp. 1132 (S.D. Ala. 1996) ("There is no dispute that two-year statute of limitations period of Ala. Code §6-2-38 applies to §1981 actions in Alabama.").

**I. Sher's Racial Discrimination Claims Not Time Barred:**

Sher presents no direct evidence of discrimination. Therefore, the sufficiency of her discrimination claims must be examined under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973), and its progeny. Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case. Once a *prima facie* case has been established, the burden shifts to the employer to articulate one or more legitimate, non-discriminatory reasons for its employment action. The defendant's burden on rebuttal is "exceedingly light . . . ." *Perryman v. Johnson Prods. Co.*, 689 F.2d 1138, 1142 (11th Cir. 1983). Finally, if the employer meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reasons are pretextual. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005).

Where the plaintiff succeeds in discrediting the employer's proffered justifications, a triable issue exists, and the finder of fact may conclude that the employer engaged in unlawful, intentional discrimination. *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir. 1994).

### *a) The Board's Legitimate, Nondiscriminatory Reasons*:

The Board concedes, as it must, that Sher states a *prima facie* claim with respect to the Board's failure to promote her to the DLA K-5 and DLA 6-12 positions. The Board's legitimate, nondiscriminatory justification for its actions is that Sher lacked the necessary skills for the DLA positions, given the number of people she would be supervising and her lack of leadership skills. Furthermore, the Board states that Sher's interview was mediocre, while Martin and Harrell performed decidedly better. Indeed, the Board goes as far as to say that Martin, who received the promotion, "demonstrated enthusiasm and leadership qualities, as well as a love and passion for reading which was needed for [the DLA] position." Def.'s Br. in Opp. to Mt. for Sum. Judg. 19. It is unclear how Martin's "love and passion for reading" was identified or quantified, and by whom.

### *b) Evidence of Pretext*:

In order to satisfy her burden under the *McDonnell Douglas* standard, Sher must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons

given the employer were not its true reasons, but were a pretext for discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000). This evidence must reveal such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons . . . that a reasonable fact finder could find them unworthy of credence." *Cooper v Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004).

Sher argues that her case should be allowed to proceed because she has provided sufficient evidence to substantially undermine the credibility of the Board's stated justifications for its actions. Therefore, the pretext analysis in this case hinges on a narrow and not uncommon issue arising in employment discrimination litigation, namely, whether such evidence creates an issue of fact for the jury, even where that evidence does not suggest that the Board harbored an illegal motive for its actions. Although the issue is not novel, it is one that the federal courts have, in the past, struggled to resolve. The Supreme Court addressed the matter in *St. Mary's Honor Center v. Hicks*, 509 U.S. 902, 113 S.Ct. 2742 (1993), but did little to clarify or end the confusion that existed among the courts of appeal.

In *Hicks*, an appeal was taken from a bench trial in which the district judge entered judgment for the defendant notwithstanding its finding that the stated reasons for the adverse employment

action were false.  In affirming the district court, the high court held that such a conclusion was possible because a finding that the employer lied as to the reasons for its decision does not restore the presumption that the real reason for its actions was racial discrimination.  *See Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994) (summarizing *Hicks*).  Even so, the *Hicks* court qualified its holding by stating:

> The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with elements of the *prima facie* case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and . . . [n]o additional proof of discrimination is *required*."

*Hicks*, 509 U.S. at 511 (internal quotations omitted) (emphasis in original).  To put it simply, the district court can go either way, depending on the facts of the particular case.  As the Eleventh Circuit has summarized, *Hicks* holds "that **proof** that a defendant's articulated reasons are false is not **proof** of intentional discrimination; it is merely **evidence** of intentional discrimination. However, **evidence** of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment." *Howard*, 32 F.3d at 525 (emphasis in original).

Sher presents two categories of evidence, which, according to her, substantially undermine the credibility of the Board's stated justifications.  First, and most persuasively, Sher argues that the

Board employees responsible for making the DLA position hires did not review past evaluations or personnel files. Their **only** basis for selecting Martin and Harrell, therefore, were the interviews and the candidates' resumés. Def.'s Ex. 3, Williams Depo. 35-37, 56. According to Sher, these materials contain no information about complaints leveled against her for her lack of leadership skills and therefore provide no basis for the Board's stated justification that she was unqualified for the DLA positions because of her poor management skills. Additionally, when viewed solely on their resumés, Sher appears to have been a much stronger candidate than Martin. Martin's only advantage over Sher was her experience in the "acting" role, which, it is to be recalled, was awarded to her despite her lacking the requisite qualifications. These factors create a genuine dispute of material fact as to whether the particular stated justification based on qualifications is merely a *post hoc* pretext for discrimination.

Like Sher, the court is troubled by the apparent inconsistency in the Board's positions. While certainly not proof, as such, of a discriminatory intent, the evidence casts serious doubt on the validity of the Board's use of the contents of Sher's past evaluations as a basis for denying her the DLA positions. The effect of this inconsistency is compounded by the failure of the Board to describe how, exactly, Sher's alleged failures as a leader would impact her work as an administrator of a language arts

program.  This is not to say that if the court were clearer on the relation between what the position calls for and a candidate's leadership skills that it would be less persuaded by Sher's evidence on this point.  Still, interpreting the facts in the way most favorable to the non-moving party, Sher has identified a triable issue of fact.

Sher's second category of evidence relates to the curious procedures the Board used while conducting the interviews for the candidates for the DLA positions.  As one of its proffered justifications for not hiring Sher, the Board states that Sher did not perform as well during the interview process as the successful candidates.  This is, of course, a perfectly valid reason for making a particular hiring decision. In a normal hiring situation, a plaintiff faces an uphill fight to show pretext in what is, by definition, a subjective evaluation.  The present case is not, however, a typical case.  First, Williams, the senior Board employee on the interviewing panel, admits that she can recall neither the questions asked of nor the answers given by Sher. Williams simply states that Sher's answers were not as good as either Martin's or Harrell's.  Second, no record exists of the interviewers' contemporaneous impressions of the candidates. This would not normally be evidence of pretext. However, where suspicions exist as to the validity of at least one of the Board's stated justifications, Sher's case is strengthened where there the

Board interviewers have (1) no recollection of what transpired in the interview, and (2) no record of the interviewing panel's evaluation of the competing candidates.

Finally, the court reiterates the cavalier way in which the Board disregarded its own requirements for certain positions. As discussed, **both** Martin and Sanders lacked formally mandated qualifications when they received their promotions to "acting" positions. With such a poor track record for reviewing the qualifications of successful candidates, the court has difficulty not harboring doubts about facially reasonable justifications proffered by the Board. Again, this is may not be proof of an intent to discriminate, but it does undermine the Board's credibility.

### ii. Sher's Retaliation Claims:

Sher also claims that, in violation of Title VII and §§ 1981 and 1983, the Board refused to interview her for other positions with the Board and refused to promote her in retaliation for filing her EEOC charge and for making her internal complaint. The Board argues that these claims are procedurally barred by Sher's failure to file a second EEOC charge in response to the alleged retaliatory conduct. This argument, based on the Eleventh Circuit's unpublished opinion in *Stuart v. Jefferson Cty. Dep't of Human Resources*, 152 Fed. Appx. 798 (11th Cir. 2005), is misplaced. It has long been the law in this circuit that a plaintiff need not

"exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981). *See also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1226 (11th Cir. 2001).

In order to state a *prima facie* claim for retaliation under Title VII and §§ 1981 and 1983, Sher must show that "(1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3)the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Sher alleges that it was the filing of her EEOC claim that prompted the Board's retaliatory conduct. Certainly, the filing of an EEOC charge is statutorily protected expression. Sher's internal grievance filed with the Board is also protected expression. Sher can therefore establish the first element of a *prima facie* claim of retaliation.

The second step of the *prima facie* analysis requires a plaintiff to show that she was the target of an adverse employment action. An adverse employment action is conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Gupta v.*

*Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). In the Eleventh Circuit, an adverse employment action need not rise to the level of termination, or some similar "ultimate employment decision," before a *prima facie* case is made. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). Even so, Sher must still demonstrate "some threshold level of substantiality." *Id*. Sher claims that she satisfies the second element because not only was she not selected for other positions that she feels she is qualified for, but also that the Board has declined to interview her for multiple open positions. She argues that this refusal to interview is itself an adverse employment action. This issue, i.e., whether or not a refusal to interview constitutes an adverse employment action, presents a fascinating question. However, the court need not address the issue at this time because even assuming that Sher can point to an adverse employment action, she cannot establish causation, the third part of the *prima facie* analysis.

To establish the causal element of her *prima facie* case, Sher need only show "that the protected activity and the adverse employment action are not completely unrelated." *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994). Even under this loose standard, Sher cannot meet her burden of showing a causal connection.

In the absence of direct evidence, causality can be established through a close temporal proximity between the

-16-

protected expression and the adverse action. *Brungart v. BellSouth Telecommunications Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). In this case, there is no evidence to indicate the exact time that any of the Board's decision-makers learned of Sher's expressive activities. The court can, however, be sure that at the time the Board filed its Statement of Position with the EEOC on March 24, 2005, the Board was aware that Sher had engaged in protected activity. The first alleged adverse action Sher complains of, i.e., the Board's failure to promote her in December 2005 or January 2006, came over eight months later. This eight month time-lag between Sher's expression and the first possible adverse action is not sufficiently close to justify an inference of causation. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508 (2001) (holding a three to four month lapse too great); *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (holding a three and a half month period too attenuated). Because Sher can point to no evidence other than temporal proximity to show causation, she cannot establish a *prima facie* case of retaliation. Therefore, the Board is entitled to summary judgment on the retaliation claims.

### iii. Sher's § 1983 Pattern or Practice Claim:

A private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state law deprives a plaintiff of rights, privileges, or

-17-

immunities "secured by the Constitution or laws" is created by 42 U.S.C. § 1983.

In bringing a claim under § 1983 against a public entity like the Board, Sher must do more than simply allege that certain employees of the Board violated her rights.  Sher must allege and demonstrate with evidence that a discriminating employee was implementing a policy or was cloaked with fully policy-making authority.  "The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of *respondeat superior*."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001).  Sher recognizes that she must establish that the Board itself had in place, either formally or informally, a "custom" or "policy" that condones employee misconduct.  *Id.* at 1307.  Sher points to no evidence to suggest that the Board had a formal policy of discrimination.  Nevertheless, the court will look carefully to see whether an informal custom or policy of discrimination against whites existed.

The Eleventh Circuit has recognized two situations that can give rise to an informal custom or policy.  *See Howard v. City of Robertsdale*, 168 Fed. Appx. 883, 890 (11th Cir. 2006).  The first is when a practice is so permanent and well-settled as to constitute a custom or usage with the force of law.  *Griffin*, 261 F.3d at 1308.  The second is when a public entity tacitly authorizes or turns a blind eye to the misconduct of its employees.

*Id.*  Under this standard, there is simply no evidence to conclude that the Board had a tacit or informal policy of discrimination against whites.  Sher does not even attempt to point to any such evidence.  Instead, she argues that the Board is liable under § 1983 because it tacitly approved of and enabled Shiver, the superintendent, to engage in discrimination.  This is not evidence of a pattern or practice of discrimination.  Sher's argument is more akin to a request to hold the Board liable for Shiver's conduct under a theory of *respondeat superior*, which, as even Sher acknowledges, is not available under § 1983.  Therefore, the court concludes that the Board is entitled to summary judgment on Sher's pattern or practice § 1983 claim.

## IV. Conclusion

For the foregoing reasons, the court will grant, in part, and deny, in part, the Board's motion for summary judgment by separate order.

DONE this 20th day of July, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE